### THE IMOGENE.

(District Court, E. D. New York. August 1, 1910.)

SEAMEN (§ 16*)—EMPLOYMENT OF ENGINEER—BREACH OF CONTRACT—DAMAGES.
    Where, after part performance of an engineer's contract to operate a yacht, the engineer refused to continue unless he was furnished a fireman, which the owner refused, but there was no meeting of minds at that time with reference to a rescission of the engineer's contract for the season, and on the owner procuring a new engineer libelant left the boat without expressing any desire to continue the contract, merely intimating that he would stand on his rights, the original contract not having in-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cluded services of a fireman unless subsequently agreed to, libelant was only entitled to recover for services up to the time he quit work.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 56–65; Dec. Dig. § 16.*]

In Admiralty. Libel by Henry R. Carter against the steam yacht Imogene. Decree for libelant.

John O'Leary, for libelant.
Battle & Marshall, for claimant.

CHATFIELD, District Judge. The sole question in this case is whether upon the demand by the libelant, Carter (who had been hired as engineer), that he be given a fireman, an agreement was reached between him and the owner of the yacht Imogene that he would relinquish his employment upon some one's arriving to take his place. It appears that the yacht in question had previously been run by one Cerow as engineer, without a fireman, that Cerow was still in the employment of the owner of the yacht and was sent for and again put in charge of the engine room, upon the owner's understanding that the libelant desired to terminate his employment if the owner did not see fit to obtain a fireman for his assistance.

The testimony shows that at the original hiring the question of fireman was taken up, but, upon certain representations by the agents of the owner that a fireman would not be necessary for the work required of the boat, the libelant agreed to hire for the season, and to leave the question of the fireman until it was seen how much one's services were needed. A fireman had actually been procured by the agent, but upon the telegram of the owner was not employed. The libelant, after the owner's arrival, spoke to him several times, saying that a fireman was necessary, to which the owner did not assent, but entered into no discussion of the question, and understood that the engineer did not desire to remain if he had to work alone.

It is evident that, from the standpoint of the owner, the occasions upon which a fireman would be necessary were few. It is evident, from the standpoint of the engineer, that if the use of the boat continued, with comparatively steady runs, a fireman might be needed. There is no doubt that the original contract of hiring was of such a nature that, in the absence of an agreement, the libelant had a right to insist on remaining through the season, and, if he were discharged without cause, to be paid his wages for that time. The 1st of October is shown by the testimony to be the reasonable limit of the season, and the claimant has not contested the fact that, as his boat was in commission, he would have required an engineer's services up to that date.

Upon the issues presented by the answer (which admits that the libelant was ordered to leave the yacht at the time set forth in the libel, but alleges that the libelant's term of service was to be dependent upon his services being satisfactory, and that his wages, amounting to $125 for the month of July, were tendered to him upon his services proving unsatisfactory, and denies that the hiring was for the season), the claimant could not have successfully met the case made out by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

libelant. As the testimony stands, the hiring was for an entire season, at the rate of $125 a month, together with maintenance and clothing, and the libelant received his board and maintenance up to the 1st of August. He is entitled, in any event, to receive wages for the month of July, and would recover for the months of August and September, together with the value of the clothing which he left upon the boat (which is admitted to be $20), unless a new defense presented by the claimant upon the trial had been interposed. An amendment to the answer was allowed in order to conform the pleadings to the testimony, and to make argument unnecessary over the sufficiency of the general denial already pleaded.

As has been already stated, the issue, therefore, is whether the libelant and the claimant agreed to terminate the contract as soon as a new engineer was obtained. The libelant left the boat upon the 1st day of August at the claimant's direction. He testifies that he stated at the time his intention to collect his wages according to the contract, and Mr. Stewart's letter shows that the libelant's services had been entirely satisfactory. The claimant testifies that the libelant did not state to him that he had any claim beyond his wages for the month which had elapsed, and it is evident that the claimant (Stewart) supposed that the libelant had agreed to give up the position of engineer, on the arrival of the new engineer and upon Mr. Stewart's statement that no fireman would be furnished. The libelant, on the other hand, acted upon the assumption that, if Mr. Stewart succeeded in finding a new engineer, he (Carter) would then have an opportunity to determine whether he desired to stay upon the boat without a fireman, or desired to terminate the contract. Mr. Stewart's understanding of the matter is plainly shown by the letter he sent with the new engineer and his conduct at the time Carter left the boat. Carter's understanding is just as plainly evidenced, and there would seem to have been, up to the 1st of August, no meeting of minds, and hence no rescission of the contract in question, even if Mr. Stewart were justified in sending for a new engineer, upon whose arrival the libelant might decide to stick to his work, but might also be responsible for any damage to the claimant for a failure to keep good his offer to rescind the original contract. It would be one thing to agree that the libelant's services should terminate as soon as a new engineer arrived, and a different thing to agree that, if anybody could be found to take the libelant's place, he would then make up his mind whether he would work without a fireman or would leave at once.

But as things stood, it would seem that the libelant should have realized that Mr. Stewart would get some one to do the work, if the libelant said he did not wish to stay. He did not dissent when Stewart told him he would get a new engineer, and upon the arrival of the new engineer left the boat without expressing any desire to continue the contract, but merely intimated that he would stand upon his rights. He could not thereafter hold himself in readiness to perform the original contract and be entitled to recover therefor. He should have realized that the original contract did not include the services of a fireman unless that item were subsequently agreed to, and he should also have realized that the claimant could not be compelled to let the

matter drift along after the libelant had once definitely stated that he would have a fireman or terminate the contract.

The libelant may have a decree for his wages for the month of July, with costs, but without interest, as the amount was in effect tendered to him.